# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

ADELITA P. GARCIA,                        No. 2:12-cv-2628-CMK

          Plaintiff,

    vs.                        <u>MEMORANDUM OPINION AND ORDER</u>

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____/

          Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 20).  For the reasons discussed below, the court will grant plaintiff's motion for summary judgment or remand and deny the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

## I.  PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on January 10, 2011 (Title XVI application) and January 20, 2011 (Title II application), alleging an amended onset of disability on January 10, 2011, due to disabilities including malignant neoplasm of colon, rectum or anus, urinary tract disorder, disorders of the back (Certified administrative record ("CAR") 32-34, 53, 85, 170-73, 206-10 ). Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held on April 25, 2012, before Administrative Law Judge ("ALJ") Philip E. Callis.  In a May 25, 2012, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1]    Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2]    Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.     The claimant has not engaged in substantial gainful activity since January 10, 2011, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.     The claimant has the following severe impairments:  rectal cancer, status post surgery, chemotherapy; degenerative disc disease; obesity; and depression (20 CFR 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  The claimant can perform all postural activities on an occasional basis.  She should avoid all exposure to unprotected heights and moving machinery.  She should avoid even moderate exposure to humidity and temperature extremes.  She is limited to simple, repetitive tasks, with occasional public contact.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on August 3, 1963 and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  <u>Bowen</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id</u>

1       11.     The claimant has not been under a disability, as defined in the
Social Security Act, from January 10, 2011, through the date of
2              this decision (20 CFR 404.1520(g) and 416.920(g)).

3 (CAR 30-36).  After the Appeals Council declined review on August 28, 2012, this appeal

4 followed.

5                  **II.  STANDARD OF REVIEW**

6         The court reviews the Commissioner's final decision to determine whether it is:

7 (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

8 whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

9 more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

10 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

11 conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

12 both the evidence that supports and detracts from the Commissioner's conclusion, must be

13 considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

14 Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

15 decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

16 Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

17 findings, or if there is conflicting evidence supporting a particular finding, the finding of the

18 Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

19 Therefore, where the evidence is susceptible to more than one rational interpretation, one of

20 which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

21 Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

22 standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

23 Cir. 1988).

24 / / /

25 / / /

26 / / /

### III.  DISCUSSION

Plaintiff argues the ALJ erred in two ways:  (1) the ALJ rejected plaintiff's treating physician and the consulting examiner's opinions without a legitimate basis; and (2) the ALJ rejected both plaintiff's testimony and her third party witness statements without a legitimate basis.

### A.    MEDICAL OPINIONS

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

5

finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

without other evidence, is insufficient to reject the opinion of a treating or examining

professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

see also Magallanes, 881 F.2d at 751.

       As to the medical opinions in this case, the ALJ reviewed several opinions.  There

are two opinions plaintiff argues are at issue, plaintiff's treating physician, Dr. Oceguera, and the

consultative examining psychologist, Dr. Medoff.  The ALJ found "[t]he mental examining and

treating opinion evidence is entirely inconsistent with the treatment record as a whole and is

found to be significantly overly restrictive." (CAR 21).

### 1.    Zack I. Medoff, Ph.D

       Dr. Medoff performed a comprehensive psychiatric evaluation of plaintiff on July

21, 2011.  Notably, this evaluation was performed during plaintiff's intravenous chemotherapy

for her colon cancer.  Plaintiff reported to the examiner that she was having difficulties with the

treatment.  Upon mental status examination, plaintiff's general appearance, including her

grooming and hygiene, were good; she appeared her stated age, average height, and overweight;

she walked slowly, used crutches, had stiff posture, and difficulty getting up and sitting down;

she was polite and maintained appropriate eye contact.  Plaintiff was calm, cooperative, and

appropriately behaved.  Plaintiff's thought and speech were coherent and proceeded in a liner and

organized fashion.  Her content of thought was appropriate.  Her mood appeared depressed and

anxious, her affect appeared restricted and somewhat tearful.  She reported limited sleep, lack of

appetite due to the chemotherapy, and no suicidal or homicidal ideations.  She was oriented x3,

able to immediately repeat 3/3 objects and 2/3 objects after five minutes.  Her remote memory

appeared to be intact as she was able to recall her past in detail.  She had some difficulties with fund of knowledge/information, unable to say who the past President was or the Governor of California, nor how many weeks are in a year; she had moderate difficulty with simple calculations, and was unable to complete serial 7s or 3s.   Her concentration appeared to be within normal limits; she was able to complete a simple three step command and focus on the conversation in hand.  Plaintiff's abstract thinking was poor as she was unable to explain proverbs.  Her ability to infer similarities and differences appeared somewhat poor, in relating an apple and an orange.  Her judgment and insight appeared fair, with appropriate responses as to what to do with a sealed addressed envelope and if she saw smoke in a theater.  Dr. Medoff diagnosed plaintiff with major depressive disorder, recurrent, severe without psychotic features, chronic posttraumatic stress disorder, chronic.  As to plaintiff's prognosis, Dr. Medoff stated:

> The claimant appeared to respond to questions in an open and honest fashion.  She did not appear to be exaggerating any of her symptoms and there were no inconsistencies between her self-report and the available records.  The claimant's symptom severity appears to be in the serious range.  The likelihood of the claimant's mental condition improving in the next 12 months is guarded.  The claimant reported symptoms and a history of Major Depressive Disorder and Posttraumatic Stress Disorder that appear to be limiting her ability to work and function in excess of a limitation due to her medical conditions.

(CAR 516).

Dr. Medoff's medical source statement as to plaintiff's functional assessment, based upon her psychiatric condition was:

> There appears to be a moderate to severe impairment in the claimant's ability to manage her own funds, given her performance during the examination, as well as, her low academic achievement.
>
> There appears to be no impairment in the claimant's ability to perform simple and repetitive tasks, given her performance during the examination, however, there appears to be a moderate impairment in the claimant's ability to perform detailed and complex tasks, given her distractibility, low frustration tolerance, difficulty concentrating and low motivation.  There appears to be a moderate to severe impairment in the claimant's ability to accept instructions from supervisors, as well as, interact with co-workers and the public, given her decreased interest and motivation, low

energy and fatigue, fear and distrust of others, irritability and anger, distractibility, difficulty concentrating.

There appears to be a mild impairment in the claimant's ability to perform work activities on a consistent basis without special or additional instruction, given her low academic achievement.

There appears to be a moderate to severe impairment in the claimant's ability to maintain regular attendance in the workplace, as well as, to complete a normal workday/workweek without interruptions from her psychiatric condition, given her decreased interest in motivation, low energy and fatigue, fear and distrust of others, irritability and anger, distractibility and difficulty concentrating.

There appears to be a severe impairment in the claimant's ability to deal with the usual stress encountered in the workplace, as she is coping with medical conditions that cause her pain and discomfort and given her decreased interest and motivation, low energy and fatigue, fear and distrust of others, irritability and anger, distractibility, difficulty concentrating, inadequate social support and lack of adequate coping strategies.

(CAE 517).

The ALJ found that:

Dr. Medoff's opinion is significant overly restrictive and explicitly relies at least in part on subjective symptom complaints, including some reports, which he did not note during his mental status examination, such as poor concentration. In fact, he found that she had normal concentration. He also appears to rely on the claimant's physical symptom complaints, in addition to subjective allegations. However, not only is Dr. Medoff not a physician, his opinion was rendered during a period when the claimant reported an increased amount of side effects due to chemotherapy, which reportedly contributed to her mental symptoms. However, within a few months of the claimant's examination and less than a year after initial treatment, the claimant's cancer treatment was completed. Furthermore, the claimant did not report additional mental symptoms during treatment after August 2011, which indicates that the claimant's mental symptoms were primarily controlled with conservative, pharmacological treatment alone and the cessation of the claimant's cancer treatment. Therefore, the claimant's treatment record does not support Dr. Medoff's restrictions for a period of 12 months. His opinion is given significantly reduced weight.

(CAR 20).

/ / /

/ / /

8

2. **Jorge Oceguera, M.D.**

Dr. Oceguera, plaintiff's primary care physician, submitted a letter and medical source statement in support of plaintiff's application.  In his letter, Dr. Oceguera states that plaintiff has suffered from hypertension and depression for many years, and that since her diagnosis of rectal cancer, her depression has been more difficult to control  (CAR 645).  In his medical source statement, he found plaintiff mildly limited in her ability to remember locations and work-like procedures; understand and remember very short and simple repetitive instructions; to carry out short and simple instructions; ask simple questions or request assistance from supervisors; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals.  He found her moderately limited in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public or customers; to accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and travel in unfamiliar places and/or use public transportation.  He further found plaintiff markedly limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.  (CAR 640-42).

/ / /

/ / /

/ / /

1    The ALJ found:

2    Dr. Oceguera's opinion is inconsistent with Dr. Mehdi's opinion.
     Dr. Mehdi is a specialist and his opinion is more reliable in regards
3    to the claimant's cancer restrictions.  Furthermore, Dr. Oceguera is
     not a mental health specialist and his opinion regarding the
4    claimant's mental limitations is not consistent with the actual
     treatment record.  In fact, the claimant only rarely reported any
5    mental symptoms during treatment and these did not persist on a
     consistent basis.  There were no mental symptom reports after
6    August 2011, which indicates that her symptoms were actually
     primarily controlled with treatment.  Therefore, his opinion is not
7    well supported by the record and is given reduced weight.

8    (CAR 21).

9    ### 3.    Aminder Mehdi, M.D.

10   Dr. Mehdi[3] was plaintiff's treating physician for her cancer.  In his medical source

11   statement, Dr. Mehdi indicated that plaintiff was under his care from December 7, 2010, through

12   October 5, 2011, for stage III rectal cancer.  Dr. Mehdi treated plaintiff with chemotherapy, to

13   which she had a good response.  Dr. Mehdi stated her prognosis as guarded.  (CAR 531).  He

14   assessed the following limitations for plaintiff:  occasionally lift or carry up to 20 pounds, never

15   more as she is weakened after surgery, radiation and chemotherapy;  sit for an hour at a time, for

16   eight hours total; stand for an hour at a time, for a total of three hours; walk for 1-2 hours at a

17   time, for three hours total, due to her weakness from chemotherapy and surgery. (CAR 532).  He

18   also opined that plaintiff could occasionally climb, balance, stoop, crouch, kneel, or crawl, and

19   should avoid exposure to heights, moving machinery, humidity, and extreme temperatures.  He

20   also noted that plaintiff is disabled until December 31, 2011.

21   The ALJ found this

22   opinion is not inconsistent with the residual functional capacity
     determined in this decision.  Dr. Mehdi's opinion is consistent with
23   the record, including the claimant's reported fatigue, her history of
     back problems, and her obesity, even without the claimant's

24

25        [3]     Plaintiff does not specially object to the ALJ's treatment of Dr. Mehdi's opinion.
     However, as the ALJ used a significant portion of Dr. Mehdi's opinion in the treatment of the
26   other opinions in the record, it is included here.

10

continued cancer treatment.  It is further consistent with his statement during treatment indicating that the claimant would not be precluded from all work.  The undersigned does not accept a limit of one hour at a time for each exertional activity due to the lack of evidence of gait abnormalities and persistent, fatigue after even 12 months of treatment and gives this aspect of the opinion reduced weight.  However, some of the jobs identified at Step 5 allow for a sit/stand option, thus, allowing for this limitation.  The undersigned also considered the statement that indicated that Dr. Mehdi could not fill out permanent disability paperwork, as the claimant's rectal cancer should not limit her return to work when she finished treatment [Exhibit 16F/11].  This opinion is consistent with Dr. Mehdi's function-by-function opinion, which is consistent with the evidence that she stopped receiving cancer treatment in October 2011 and stopped reporting cancer related side effects in November 2011, less than a year after she initiated treatment.  It is also given significant weight.  The undersigned also considered Dr. Mehdi's opinion that the claimant would have disability until the end of December 2011, as she would need another two to three months to recuperate [Exhibit 16F/2].  This opinion is vague and based, at least in part on conjecture.  It is not supported by the record, which indicates that the claimant last reported related symptoms in November 2011.  While there is some evidence of subsequent fatigue, this appears to have been attributed to non-severe sleep apnea.  This opinion is given reduced weight.  Notably, even if it were fully accounted for, it provides for limitations spanning less than a year after the claimant's amended alleged onset date and would not be inconsistent with the ultimate finding in this decision.

(CAR 18).

### 4.    Analysis

Plaintiff argues that the ALJ rejected both Dr. Oceguera and Medoff's opinions without legitimate reasons for doing so.  However, as the defendant articulates, the ALJ throughly analyzed each of the doctors' opinions and provided several reasons for treating the opinions as she did.  The medical opinions are not completely contradictory, and the ALJ did a reasonable job in discussing where the opinions contradicted each other.  As they were not completely contradictory, the ALJ was required to give clear and convincing reasons for discrediting the opinions where she did.  Plaintiff argues that the ALJ unreasonably accepted the non-examining physician opinions in rejecting the treating and examining physician opinions.  While the ALJ is prohibited from relying on a non-examining physician opinion as the sole

1    reason for rejecting a treating or examining medical opinion, that is not what the ALJ did here.

2    Rather, the ALJ provided several reasons for her treatment of each opinion, none of which were

3    relying on the non-examining physicians.  While the ALJ did accept the non-examining

4    physician's limitations, she did not use those opinions as a reason to reject the other medical

5    opinions.

6             The ALJ determined that to the extent Dr. Oceguera's opinion is inconsistent with

7    Dr. Mehdi's opinion, she accepted Dr. Mehdi's opinion as he is the specialist treating plaintiff's

8    cancer.  To the extent there is a conflict, this is an acceptable resolution by the ALJ, who is

9    charged with resolving such conflicts.  As to plaintiff's mental health issues, the ALJ pointed out

10   that Dr. Oceguera is not a mental health specialist, that plaintiff rarely reported mental symptoms

11   after August 2011 (once she completed her cancer treatment), and is therefore not well supported

12   by the record.  Plaintiff disagrees with this determination, but fails to cite any support for her

13   disagreement in the record.  A review of the medical records confirms the ALJ's finding that

14   plaintiff rarely reported mental health symptoms after her cancer treatment was completed.  The

15   undersigned finds the ALJ throughly reviewed Dr. Oceguera's opinion, and provided reasons for

16   discounting the opinion which were clear and convincing.  While the evidence may be subject to

17   alternate interpretations, the court may not simply substitute it's own opinion.  The ALJ's

18   interpretation of the evidence is not erroneous, is supported by the record, and therefore must be

19   affirmed.  See Thomas, 278 F.3d at 954.

20            Contrary to plaintiff's argument that the ALJ failed to articulate a legitimate

21   reason for rejecting Dr. Medoff's opinion, as a treating medical source, the undersigned finds that

22   the ALJ provided a thorough evaluation of Dr. Medoff's opinion, and provided clear and

23   convincing reasons why it was given reduced weight.  Most significantly, the ALJ found the

24   examination of plaintiff occurred during plaintiff's cancer treatment when she was

25   understandably having a difficult time.  Given the lack of mental health complaints after the

26   treatment was over, plus the finding that Dr. Medoff relied on plaintiff's discredited subjective

1  symptom complaints and her physical complaints, the reasons provided by the ALJ are clear and

2  convincing, and are supported by the record.  The court finds no reversible error in the treatment

3  of the medical opinions in the ALJ's decision.

4  **B.     CREDIBILITY**

5  Plaintiff further contends that the ALJ's credibility determination was in error.

6  The Commissioner determines whether a disability applicant is credible, and the court defers to

7  the Commissioner's discretion if the Commissioner used the proper process and provided proper

8  reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding

9  must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th

10 Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir.

11 1995).  Rather, the Commissioner must identify what testimony is not credible and what

12 evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in

13 the record of malingering, the Commissioner's reasons for rejecting testimony as not credible

14 must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155,

15 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and

16 Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

17 If there is objective medical evidence of an underlying impairment, the

18 Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

19 because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

20 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

21         The claimant need not produce objective medical evidence of the
        [symptom] itself, or the severity thereof.  Nor must the claimant produce
22      objective medical evidence of the causal relationship between the
        medically determinable impairment and the symptom.  By requiring that
23      the medical impairment "could reasonably be expected to produce" pain or
        another symptom, the Cotton test requires only that the causal relationship
24      be a reasonable inference, not a medically proven phenomenon.

25 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

26 F.2d 1403 (9th Cir. 1986)).

1    The Commissioner may, however, consider the nature of the symptoms alleged,

2   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

3   947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

4   claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

5   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

6   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

7   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

8   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

9   claimant cooperated during physical examinations or provided conflicting statements concerning

10  drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

11  claimant testifies as to symptoms greater than would normally be produced by a given

12  impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

13  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

14          As to plaintiff's credibility, the ALJ found inconsistencies in the record, which did

15  not support her statements.  These inconsistencies included her daily activities and earnings

16  record.  Specifically, the ALJ found it inconsistent that plaintiff stated she could not maintain her

17  hygiene because of her back[4], but she also reported some good activities of daily living, such as

18  keeping her living area clean, picking up around the house but not heavy cleaning, washing

19  dishes, driving, and reading.  The inconsistent earnings record, where plaintiff reported she

20  stopped working in 2004 because she was laid off, the ALJ found indicated there may be other

21  reasons for her continued unemployment unrelated to her allegedly disabling impairments.

22  (CAR 14-15).  The ALJ also found plaintiff's "treatment record is not what one would expect for

23

24          [4]  Plaintiff is correct that the ALJ misstated her testimony in this regard.  Plaintiff testified
    that she could not maintain her hygiene because it was difficult to bathe due to her colostomy
25  bag, not because of her back.  However, even with this error, the ALJ provided several other
    reasons.  Including this as support for her credibility finding is harmless error where other
26  reasons were adequately supported by the record.  See Batson v. Commissioner of Social
    Security, 359 F.3d 1190, 1197 (9th Cir. 2004).

a totally disabled individual." (CAR 15).  After reviewing plaintiff's treatment records and the

medical opinions in the record, the ALJ concluded:

> the claimant's allegations are not credible in light of some
> inconsistent reports of daily activities and work history.  More
> importantly, they are not supported by the medical record, which
> indicates that most of her treatment did not persist for even 12
> months.  There is no back treatment or even allegations of pain
> during treatment after May 2011.  There is little evidence of
> residual symptoms from cancer treatment after November 2011
> and her subsequent fatigue appears to be attributed to sleep apnea
> after this date and even that was prior to 12 months after her
> amended alleged onset date.  However, even with her fatigue, there
> is no evidence that she could not perform work within the residual
> functional capacity in this decision.  The claimant only received
> rare and short-lived mental treatment.  However, these rare
> symptom complaints are fully accounted for in this decision.  The
> mental examining and treating opinions evidence is entirely
> inconsistent with the treatment record as a whole and is found to be
> significantly overly restricted.  For all these reasons, when the
> evidence is considered as a whole, the undersigned finds that the
> claimant can perform a wide range of sedentary work.  The
> claimant can perform all postural activities on an occasional basis.
> She should avoid all exposure to unprotected heights and moving
> machinery.  She should avoid even moderate exposure to humidity
> and temperature extremes.  She is limited to simple, repetitive task,
> with occasional public contact.

(CAR 21).

The undersigned finds these reasons clear and convincing.  Contrary to plaintiff's

argument, the ALJ did not simply discredit her testimony on the basis that it is unsupported by

objective medical evidence.  Rather, the ALJ found a lack of treatment that would be consistent

with her alleged disabling conditions.  Especially that the treatments were either effective or

lasted for less than the 12 month period of time.  The undersigned finds the credibility

determination[5] is supported by the record as a whole.

/ / /

---

[5]     Plaintiff's motion for summary judgment indicates she is also challenging the credibility determination as to her third party witness.  However, she fails to set out any argument in her motion as to that alleged error.  Therefore, there is no argument made to be evaluated by the undersigned.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Doc. 16) is denied;

2.    Defendant's cross-motion for summary judgment (Doc. 20) is granted; and

3.    The Clerk of the Court is directed to enter judgment and close this file.


DATED:  March 31, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE